J-A24041-16

2016 PA Super 277

| MARINER CHESTNUT PARTNERS, L.P. BY ITS COURT APPOINTED RECEIVER, DAVIN S. LAMM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| BROOK LENFEST, MARINER CHESTNUT HOLDINGS, LLC., CHESTNUT PROPERTY GP, LLC., CHESTLEN DEVELOPMENT, LP., CHESTLEN DEVELOPMENT GP, LLC., JOHN E. ROYER, JR., ESQUIRE, AND ROYER & ASSOCIATES, LLC. | |
| Appellees | No. 3620 EDA 2015 |

Appeal from the Order Dated October 15, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2012, No. 02900

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                    **FILED DECEMBER 07, 2016**

Appellant, Mariner Chestnut Partners, L.P. ("the Partnership"), by its court-appointed Receiver, Davin S. Lamm, appeals from an order dated October 15, 2015, that dismissed the Receiver's Amended Complaint. By an order dated September 24, 2013, the trial court sustained Appellees' preliminary objections to Counts II, IV, V, and VI of the Amended Complaint, and the October 15, 2015, order granted Appellees' motion for summary judgment on the remaining Counts, I and III. For the reasons that follow, we affirm.

The facts giving rise to this case date to May 19, 2000, when the Partnership was created as a Pennsylvania limited partnership. The original partners included Davin Lamm, Mark Wiser, Brook Lenfest, Timothy Mahoney, II, and Mariner Chestnut Holdings, LLC. Mariner Chestnut Holdings, LLC, which was owned in equal shares by Lenfest and Mahoney, was named General Partner. Lamm, Wiser, Lenfest, and Mahoney were limited partners. The Partnership Agreement, as amended in 2003, defined the rights and responsibilities of the partners and gave the General Partner exclusive authority to manage the Partnership's business and affairs, with no duty to consult with the limited partners. Trial Court Opinion, 7/22/11, at 6-8.

The purpose of the Partnership was to acquire the real property located at the northeast corner of 15th and Chestnut Streets in Philadelphia, rent it, and ultimately sell it. The Partnership successfully purchased the property on October 16, 2000, for $11,150,000. In 2007, the Partnership entered into a letter of intent with Gatehouse Partners and subsequent agreements with Hilton Worldwide to develop the property as a mixed-use luxury hotel and condominium high-rise building bearing the name Waldorf-Astoria. Trial Court Opinion, 7/22/11, at 6-7, 11.

On March 12, 2009, following disagreements among the partners regarding the project, Mariner Chestnut Holdings, LLC, was removed as General Partner, and Chestnut Property GP, LLC ("Chestnut Property") a company owned wholly by Lenfest, was appointed as the new General

Partner. According to the Partnership Agreement, this change constituted a "liquidating event" that required the General Partner, now Chestnut Property, to liquidate the Partnership within a reasonable time. Shortly thereafter, Mahoney sold all of his interests and rights in the Partnership to Lenfest. Later that year, Hilton terminated the Waldorf-Astoria agreements and the Partnership ceased development of the property. Trial Court Opinion, 7/22/11, at 11-15, 29.

In May 2009, Lamm and Wiser brought suit against the Partnership and the other current and former partners (Lenfest, Mahoney, Mariner Chestnut Holdings, LLC, and Chestnut Property) and their attorneys in an action captioned **Lamm v. Lenfest**, May Term 2009, No. 2232 (C.P. Phila.) ("the **Lamm** litigation"). The fourth and final amended complaint in that action, filed January 26, 2010, contained six interrelated causes of action, including breach of fiduciary duty and breach of the Partnership Agreement, and sought an accounting of the financial affairs of the Partnership and court-supervised dissolution. Trial Court Opinion, 7/22/11, at 5-6. The **Lamm** litigation was placed in the Philadelphia Court of Common Pleas' Commerce Program, where it was assigned to the Honorable Mark I. Bernstein.

Meanwhile, the General Partner, Chestnut Property, via its sole owner, Lenfest, secretly made new plans to develop the property. In April 2010, while the **Lamm** litigation was pending against it, Chestnut Property executed a letter of intent ("LOI") with Starwood Hotels & Resorts Worldwide

for a proposed "W" Hotel and Condominiums. The LOI contained a provision requiring that it be kept confidential, and Chestnut Property and Lenfest did not tell Mariner Chestnut's limited partners about it or about the new development plans. Trial Court Opinion, 7/22/11, at 5-6.

In July 2010, while the limited partners were still in the dark about the Starwood development plans, the Partnership contracted with CB Richard Ellis, Inc. ("CBRE") to sell the property at an absolute auction. Trial Court Opinion, 7/22/11, at 16. Lenfest made plans to buy the property at that action through another entity that he owned. Trial Court Opinion, 10/15/15, at 4-5.

On August 4, 2010, Lenfest was deposed in the *Lamm* litigation by counsel representing Lamm and Wiser. During the deposition, Lenfest disclosed that he had signed a letter of intent and term sheet for development of the property into a project similar to the earlier Waldorf-Astoria project. Because of the confidentiality clause, he did not divulge that the agreement was with Starwood. Lenfest's deposition was the first time that the other Mariner Chestnut partners learned of the new development plans. Trial Court Opinion, 7/22/11, at 5-6.

On October 5, 2010, CBRE auctioned the property. Both Lamm and Wiser were present at the auction. The property was sold for $12,000,000 to Chestlen Development, LP, an entity owned by Lenfest. Trial Court Opinion, 7/22/11, at 6; *Lamm* Revised Trial Court Opinion, 11/5/12, at 2 n.3.

On October 11, 2010, Lenfest provided a copy of the Starwood LOI to Lamm and Wiser. On October 18, 2010, Chestnut Property sent the limited partners a letter officially notifying them of the results of the auction sale and explaining that, as General Partner, it would be taking actions to dissolve, wind up, and liquidate the Partnership. Trial Court Opinion, 7/22/11, at 6.

In July 2011, Judge Bernstein granted summary judgment to the defendants on most counts in the *Lamm* litigation. With respect to a count alleging that Lenfest and the General Partners had breached their fiduciary duties by wrongly abandoning the Waldorf-Astoria Project for their personal gain and benefit, the court held that the plaintiffs failed to prove that the defendants received a personal benefit or that the plaintiffs were harmed. *Lamm* Trial Court Opinion, 7/22/11, at 32. With respect to a breach of contract count alleging that Lenfest and Chestnut Property breached the Partnership Agreement by continuing operations of the Partnership beyond December 31, 2005, the court held that the Agreement did not mandate liquidation until March 12, 2009, when Mariner Chestnut Holdings, LLC, was removed as General Partner. *Id.* at 28. The court held further that although Chestnut Property breached the Partnership Agreement by not beginning liquidation for another fifteen months, the plaintiffs proved no damages to them as a result of that breach. *Id.* at 27-30.

Judge Bernstein granted the *Lamm* plaintiffs' request for an order requiring dissolution of the Partnership because, "after adamantly insisting

dissolution should not occur . . . Defendants sold the property [at the October 5, 2010, auction sale] and passed resolutions that retroactively ended the Partnership without informing either the Court or the plaintiffs." *Lamm* Trial Court Opinion, 7/22/11, at 33-34. Judge Bernstein removed Chestnut Property as General Partner and appointed a Liquidating Trustee to "review the sale, accumulate all assets, dissolve the Partnership and wind up its affairs." *Id.* at 36. Judge Bernstein's order stated that the Liquidating Trustee had the power "to continue to prosecute or to institute in the name of [the Partnership] any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue." *Lamm* Order, 4/5/11, at ¶ 6(j). Judge Bernstein denied plaintiffs' request for an accounting, however, explaining: "Plaintiffs had the opportunity to discover all Partnership books and records through discovery. The court-appointed liquidator must necessarily determine the propriety of all activities by the [G]eneral [P]artner and the propriety of the 'absolute auction' sale in order to compile all assets for dissolution." *Lamm* Trial Court Opinion, 7/22/11, at 38.[1]

The plaintiffs appealed the parts of the judgment adverse to them on May 3, 2011, and the defendants filed a cross-appeal on May 16, 2011, that

---

[1] Judge Bernstein's dispositions of the other *Lamm* causes of action and requests for relief are not relevant to issues presented by this appeal and therefore are not discussed here.

contested the court's findings in support of its decision to appoint a Liquidating Trustee.[2] This Court affirmed the judgment of the trial court in an unpublished memorandum dated October 16, 2012, that held that the plaintiffs either abandoned or waived most of their issues. We also held that the defendants' cross-appeal did not merit relief, as the issues raised by the defendants challenged only specific findings of the trial court, but not the actual appointment of the Liquidating Trustee. **See Lamm** Superior Court Opinion at 16, 21-22, 25, 27, 32, 34-36.

In March 2012, while awaiting the results of the appeal, Judge Bernstein ordered the Liquidating Trustee to submit a report stating the value of any potential lawsuits that could be brought on behalf of the Partnership. The Liquidating Trustee filed that report on July 31, 2012.

The Report disclosed that between April and September 2010, the Partnership paid over $1.1 million to develop the Starwood project prior to the auction, including payments totaling $712,993 to an architectural firm, Cope Linder. **See** Liquidating Trustee's Final Report of Findings with Regard to General Partner Activities and Auction Sale of Assets ("Report"), 7/31/12,

---

[2] The appeal was docketed in this Court as **Lamm v. Lenfest**, Nos. 1203 EDA 2011, 1394 EDA 2011. The defendants disagreed with the trial court's statements that the property was sold without the knowledge of the limited partners, that Lenfest concealed his intent to sell the property from the limited partners, and that Lenfest "blurred or ignored the lines between his individual interests and those of the general and limited partnerships." **See Lamm** Superior Court Opinion at 34.

at 11. The Liquidating Trustee stated that Chestnut Property, as General Partner, had concealed these payments and plans from the limited partners through creative ledger entries and the use of third parties, and, when asked by the Liquidating Trustee, would acknowledge only that project expenditures amounted to $225,000 in Partnership funds. *Id.* 11-13, 17-19. The Report said that the last time the plaintiffs reviewed the Partnership's books was in 2009, although discovery in the case extended until October 2010. *Id.* at 10, 12.

The Report stated that employees of CBRE, the auction company, told the Liquidating Trustee that they had had no knowledge of the Partnership's LOI with Starwood and that had they known of it, they would have disclosed this information to potential buyers at the auction. Report at 20, 22. However, CBRE could not state with certainty whether or how the Starwood development plans would have affected the auction sale price. *Id.*

The Report identified several potential causes of action against Chestnut Property and against Lenfest individually. First, it said a claim for breach of fiduciary duty could be based on concealment of the Starwood LOI from the limited partners and Chestnut Property's use of Partnership funds to develop the Starwood project. The Report stated:

> Lenfest was the control[ling] limited partner of the Subsequent General Partner, and in that capacity he owed a fiduciary duty to the Partnership, as well as to its limited partners, Lamm and Wiser. Pursuant to the Amended and Restated Partnership Agreement, his fiduciary duties precluded him from having any concealed or hidden earnings from the Partnership. Notwithstanding those duties, Lenfest appears to have

- 8 -

intentionally concealed from the Partnership and his limited partners the existence of the Starwood LOI and the potential upside to them if the Project succeeded. Lenfest also concealed from his partners the fact that Partnership funds were being used to pay Cope Linder, Starwood, and his advisors for their work on the Project. Without disclosure of these facts, Lenfest caused the Partnership to act in his own self-interest, by selling its principal asset to his wholly-owned company at what may have been less than fair market value. The acts described in this Report clearly constitute breaches of fiduciary duty owed to the Partnership by the Subsequent General Partner under Pennsylvania law.

Report at 27 (footnote omitted). However, the Report also stated that for a variety of reasons — not the least of which was Lenfest's contractual entitlement to payments based on his capital investment in the Partnership (the "Lenfest Priority Return")[3] — it would be difficult to prove damages for the claim:

Based on Lenfest's conduct, the Liquidating Trustee believes that Lenfest breached his fiduciary duties to the Partnership. However, it is speculative and beyond the scope of the Liquidating Trustee's investigation to conclude that the Partnership, and derivatively, Lamm and Wiser, suffered a loss under a possible scenario where either the Property at auction would have generated sufficient funds to fully satisfy the Lenfest Priority Return[,] leaving funds for distribution to the Limited Partners, or that if Lenfest had disclosed the Starwood LOI to Lamm and Wiser, they would have been able to access funds to contribute to the Partnership, thereby reducing Lenfest's Priority Return and increasing their interest. Even if that were true, the

_____

[3] The Report explained: "Because Lenfest contributed the capital to fund the Partnership, he was entitled to receive a 7.5% priority (investment) return on his capital contributions, together with the capital contributions themselves (collectively the 'Lenfest Priority Return'), payable upon the Partnership's winding up and termination, prior to distributions to Lenfest, Mahoney, Lamm, or Wiser in their status as Partners." Report at 6.

Liquidating Trustee has been denied the ability to confirm the status of the Project and Lenfest's relationship with Starwood as of this date. Notwithstanding what the Liquidating Trustee concludes is egregious conduct by Lenfest, it could be that the Project does not offer much prospect of return on investment and the Partnership, if it had retained the Property, would only be deeper in debt.

*Id.* at 26.

Similarly, the Liquidating Trustee found that a cause of action for breach of the Partnership Agreement could be based on Chestnut Property's concealment and mischaracterization of expenses. Report at 29. Again, however, the Liquidating Trustee determined that it would be difficult to prove damages sustained by the Partnership from this breach. *Id.* at 30.

The Report concluded that because damages could not be proven, there was no concrete basis for a suit against Lenfest or Chestnut Property:

[D]ue to the fact that the Project with Starwood has not been built, and in recognition of the Lenfest Priority Return, it appears that Lenfest's conduct, however reprehensible, has resulted in no quantifiable damages to the partnership itself. Unless a court or jury were to determine that the conduct described in this Report supports the subordination or wiping out of the Lenfest Priority Return and Lenfest's capital contribution, the Liquidating Trustee sees no basis for initiating any legal action on behalf of the Partnership against Lenfest.

Report at 31. However, the report also stated that it did not have access to all of the information necessary to reach a definitive conclusion. *Id.* at 25 n.34.

On September 20, 2012, Judge Bernstein entered an order accepting the Liquidating Trustee's Report and appointing Lamm as Receiver for the Partnership. As Receiver, Lamm was allowed "to pursue litigation on behalf

of the Partnership based on the claims identified in the Trustee's Report."

***Lamm*** Order, 9/20/12. Judge Bernstein explained the basis for appointing

the Receiver as follows:

> The Liquidating Trustee determined that at the same time the general partner represented to the limited partners and the public that the property located at 1441 Chestnut Street, the only partnership asset, was to be auctioned for use as a parking lot, the general partner had in fact secured an agreement or agreement in principle to develop that property as a luxury Starwood Hotel. Accordingly, the partnership has the potential claim that the general partner in breach of his duties arranged to transfer the only partnership asset for inadequate consideration to a different entity he controlled, for the exact purposes for which Mariner Chestnut Partners, L.P. had been created.

***Lamm*** Trial Court Revised Opinion, 11/5/12, at 2. The order clarified that

"The Report was not the result or subject of any adversary proceeding. The

court makes no factual findings based on the Report." ***Lamm*** Order,

9/20/12, at n.1.

Judge Bernstein required Lamm, as Receiver, to dissolve the

Partnership if no litigation was filed within ninety days. ***Lamm*** Order,

9/20/12, ¶¶ 3-4. He gave this explanation for why he set that time limit:

> So that this matter, which has already been in litigation for three and one half years, not remain interminably dormant, the Court ordered that litigation based on the potential claims identified in the Liquidating Trustee's final report must be filed within 90 days or the partnership shall be immediately dissolved and all remaining assets distributed in accord with the partnership agreement.

Trial Court Revised Opinion, 11/5/12, at 3.

Lamm, as Receiver, then brought this new action (**Mariner Chestnut Partners, L.P. ex rel. Lamm v. Lenfest**, Dec. Term 2012, No. 2900 (C.P. Phila.)) against defendants Brook Lenfest, Mariner Chestnut Holdings, Chestnut Property, Chestlen Development, LP, Chestlen Development GP, LLC,[4] John E. Royer, Esquire, and Royer and Associates, LLC,[5] on December 20, 2012 — just ninety days after the date of Judge Bernstein's order. The case was placed in the Philadelphia Court of Common Pleas' Commerce Program and assigned to the Honorable Gary S. Glazer. The Receiver's First Amended Complaint, filed April 9, 2013, set forth six claims: breach of fiduciary duty (I), fraud (II), usurpation of a corporate opportunity (III), conversion (IV), violation of the Pennsylvania Uniform Fraudulent Transfer Act (V), and equitable subordination (VI). The claims were based largely on the findings in the Liquidating Trustee's Report. **See** First Amended Complaint, 4/9/13, at 5-10.

On September 24, 2013, Judge Glazer sustained Defendants' preliminary objections to Counts II (fraud), IV (conversion), V (violation of

---

[4] Chestlen Development GP, LLC, a company owned by Lenfest, is the general partner of Chestlen Development, LP, the company that bought the Chestnut Street property at the 2010 auction sale. **See** Plaintiff's Memorandum of Law in Opposition to Defendant's Preliminary Objections to Plaintiff's Amended Complaint at 6.

[5] John E. Royer and Royer and Associates were Lenfest's attorneys at the time of the alleged wrongdoing described in the Liquidating Trustee's Report.

the Fraudulent Transfer Act), and VI (equitable subordination). The court

explained:

> Under Pennsylvania law, the specific elements of fraud are: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation at hand; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 889 (1994). Defendant, Brook Lenfest (hereinafter "Lenfest"), was the sole owner of the corporate general partner of plaintiff. Defendants did not make representations or omit representations to the partnership as Lenfest was the general partner and Lenfest allegedly knew of the opportunity.
>
> Further, "a plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a chattel at the time of alleged conversion." *Chrysler Credit Corporation v. Smith*, 434 Pa. Super. 429, 643 A.2d 1098, 1100 (Pa. Super. 1994), *appeal denied*, 539 Pa. 664, 652 A.2d (1994). Plaintiff did not have constructive possession over future profits as they are still unascertainable at this point. Additionally, under the Pennsylvania Uniform Fraudulent Transfer Act, "[a] transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claims arose before or after the transfer was made . . . if the debtor made the transfer . . . with actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa. C.S.A. §§ 5104, 5105. In the instant case, plaintiff made the transfer. Plaintiff cannot allege that it is the creditor and the debtor. Therefore, Count V is dismissed.

Order, 9/24/13, at n.1.

On October 15, 2015, Judge Glazer granted Defendants' motion for

summary judgment on remaining Counts I (breach of fiduciary duty) and III

(usurpation of a corporate opportunity), and dismissed the amended

complaint in its entirety. In an opinion, Judge Glazer explained that those

tort claims were barred by the applicable two-year statute of limitations. Even though, under the discovery rule, the statute of limitations is tolled until the plaintiff discovers (or reasonably should discover) the injury and its cause, Judge Glazer concluded that the Partnership knew about the Starwood LOI and the sale of the property in October 2010, over two years before the suit was initiated, when Chestnut Property sent the limited partners a formal letter notifying them of the sale:

> While more evidence surrounding the evolution of the W Hotel/Condo project involving Lenfest and Starwood was subsequently unearthed, plaintiff was aware of the general facts giving rise to the alleged injuries no later than October 18, 2010. Since these dates are inscribed on the documents themselves, issues of credibility do not come into play. No reasonable mind could hold that plaintiff did not know — or should not have known — of its injury until after October 18, 2010. Therefore, the two year statute of limitations period expired on October 18, 2012, two months prior to plaintiff filing its writ of summons on December 19, 2012.

Trial Court Opinion, 10/15/15, at 7-10. The court added that although, at the time of the discovery, the Partnership had been under the control of Lenfest, "Lamm could have filed a derivative action pursuant to 15 Pa.C.S.A. § 8591. He chose not to do so." *Id.* at 10 (footnote omitted).

Judge Glazer held that the September 20, 2012, order entered by Judge Bernstein that gave the Receiver 90 days to file claims did not extend the statute of limitations. He explained:

> The [September 20, 2012] order permitted the receiver to file litigation on behalf of the partnership within ninety days, or else the partnership would have been dissolved immediately. The order did not authorize plaintiff to assert claims that fail as a

matter of law. Any claim filed within the ninety day time period was still required to conform to the rules of civil procedure; this includes the statute of limitations.

Trial Court Opinion, 10/15/15, at 10. In a footnote, Judge Glazer added:

Assuming arguendo that plaintiffs' claims were not barred by the statute of limitations, defendants' motion still would have been granted due to collateral estoppel and res judicata. Based upon J. Bernstein's and the Superior Court's holdings in the related underlying litigation, the fundamental issues raised by plaintiff have already been litigated, decided and affirmed on appeal.

*Id.* at 10 n.10.

Lamm, as Receiver, filed a timely notice of appeal on November 12, 2015. In his brief, he raises the following issues:

1.     Where: (i) Appellant's claims for breach of fiduciary duty and usurpation of a partnership opportunity had been timely raised originally in a predecessor action, *Lamm, et al v. Brook Lenfest*, *et al*, May Term 2012, No. 2232 ("Original Action"); (ii) Judge Bernstein in the Original Action appointed a Liquidating Trustee; (iii) Upon receipt of the Liquidating Trustee's Report that found multiple acts of wrongdoing by Appellee ("Lenfest"), Judge Bernstein appointed Appellant as Receiver to sue for damages in a new case, which became the instant action; and (iv) The instant action is based on the wrongdoing found by the Liquidating Trustee, and was filed timely in accordance with Judge Bernstein's Order, did the trial court err and abuse its discretion in granting summary judgment based on the statute of limitations and res judicata?

2.     Where the Statute of Limitations was tolled when Judge Bernstein accepted the Liquidating Trustee's Report in the Original Action, and instead of adjudicating the damages in that Original Action, Judge Bernstein elected to appoint the Receiver with instructions to institute the instant action to recover damages, did the trial court err and abuse its discretion in granting summary judgment based on the statute of limitations and res judicata?

3.     Where Judge Bernstein, in the Original Action, considered the pleadings filed there to put before the Court the issues of wrongdoing by the General Partner and Lenfest, as well as the potential remedies of appointing a receiver and dissolution of the partnership, did Judge Glazer err in the instant case when he ruled that Appellant should have filed a separate derivative action in addition to the actions that had already been filed?

4.     Did the Trial Court err by holding that the discovery rule did not apply and extend the Statute of Limitations until after the Report was issued where the Report expressly found that Lenfest and his counsel misled Judge Bernstein and Appellant by duplicitous and intentional conduct calculated to deceive Appellant about what Lenfest was doing?

5.     Where new instances of violations by Lenfest that had occurred during the litigation in the Original Action, but were kept secret by Lenfest until discovered by the Liquidating Trustee, and where Judge Bernstein expressly included these violations in his Order requiring the Receiver to start a new suit, and where the new violations occurred after the original Order and affirmance were entered, did the trial court err when it ruled the claims on the new violations were barred by collateral estoppel and res judicata?

6.     Did the trial court err and abuse its discretion in granting Appellees' Preliminary Objections for Appellant's claims for fraud, conversion, and equitable subordination where the wrongdoing and acts supporting these claims were described in the Report of the Liquidating Trustee and validated and accepted by Judge Bernstein in the Original Action?

7.     Where Judge Bernstein ruled Appellant was appointed "to pursue litigation on behalf of the Partnership based on the claims identified in the Trustee's Report," and where Appellant alleged in the Amended Complaint that Appellees deprived Appellant of rights, profit and caused damages that grew out of the wrongdoing described in the Liquidating Trustee's Report, did the trial court err, and abuse its discretion in granting Appellees' Preliminary Objections for Appellants' claims?

Appellant's Brief at 5-6.

The Receiver does not organize his brief according to the above questions.[6] Therefore, we will address the issues as they are presented in the Receiver's brief: (1) whether the discovery rule tolled the statute of limitations, (2) whether the Law of the Case doctrine extended the statute of limitations, and (3) whether the statute of limitations does not apply because this case is a continuation of the former timely action and is not barred by res judicata or collateral estoppel.

We affirm the trial court's entry of summary judgment on Counts I (breach of fiduciary duty) and III (usurpation of a corporate opportunity) on the ground that those counts are barred by the two-year statute of limitations.[7] Because the statute of limitations applicable to Counts II (fraud) and IV (conversion) also is two years, *see* 42 Pa.C.S §§ 5524(7) (two-year statute of limitations for an action in fraud), 5524(3) (same for conversion), and because the discovery, tolling, and other timeliness issues regarding those counts are the same as those for Counts I and III, we affirm the dismissal of those counts for that same reason. *See Sw. Energy Prod. Co.*

---

[6] *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued, and shall have at the head of each part . . . the particular point treated therein . . . .").

[7] Appellant mistakenly argues against the trial court's grant of "preliminary objections" on count III (usurpation of a corporate opportunity). *See* Appellant's Brief at 42-44. In fact, the trial court denied Defendants' preliminary objections on this count and then later entered summary judgment.

*v. Forest Res., LLC*, 83 A.3d 177, 184 (Pa. Super. 2013) (an appellate court is "not bound by the rationale of the trial court and may affirm on any basis"). The Receiver presents no argument regarding the trial court's disposition of Counts V (violation of the Fraudulent Transfer Act) and VI (equitable subordination), and any issues relating to those dismissals therefore are waived. *See Commonwealth v. Furrer*, 48 A.3d 1279, 1281 n.3 (Pa. Super. 2012) (issues not developed in an appellate brief with pertinent authority are waived, citing Pa.R.A.P. 2119(a)).

Our standard of review of an appeal from an order granting summary judgment is well settled: "Summary [j]udgment may be granted only in those cases where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999) (citation omitted). Whether there is a genuine issue of material fact is a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary. *Chanceford Aviation Props, L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1103 (Pa. 2007). When reviewing a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. *Id.*

**The Statute of Limitations**

The Discovery Rule and Tolling

The Receiver's primary argument is that the trial court erred by dismissing the complaint on statute of limitations grounds because the two-year period was tolled by the discovery rule. *See* Appellant's Brief at 27-40. The Receiver claims that he exercised due diligence in bringing the original action in 2009, but could not have recognized the nature and severity of the later acts of Defendants that occurred during the pendency of that action until the release of the Liquidating Trustee's Report. *Id.* at 34. He asserts that this is due in large part to efforts taken by Lenfest to conceal these very same actions from the limited partners. *See, e.g.*, *id.* at 20. The Receiver states:

> As the Trustee's Report found, Defendants hid the truth about the auction, and Appellant had no reasonable means of discovering the wrongdoing until the Trustee's Report was published. The injuries that Defendants caused to the Partnership were not known (*i.e.*, discovered) until, at the very earliest, the Liquidating Trustee's issuance of his Final Report on July 31, 2012. This is less than six months before the Partnership commenced this lawsuit.

*Id.* at 28.

To support this argument, the Receiver invokes the doctrine of adverse domination. Appellant's Brief at 31-35. He explains that under that doctrine, "a statute of limitations is tolled against director/officer misconduct so long as a majority of the board is controlled by the alleged wrongdoers." *Id.* at 33 (citing *Clark v. Milam*, 847 F. Supp. 409, 421 (S.D. W. Va. 1994),

quoting *Fed. Deposit Ins. Corp. v. Cocke*, 7 F.3d 396, 402 (4th Cir. 1993)). The Receiver also relies on *In re CitX Corp.*, No. 01-19604, 2004 WL 2850046, *4 (E.D. Pa., Dec. 8, 2004), in which a federal court held that applying a strict statute of limitations against an appointed bankruptcy trustee would be inequitable because the trustee was not in a position prior to the filing of the bankruptcy to be fully aware of all potential claims to be made.[8]

Here, according to the Receiver, because Lenfest controlled Chestnut Property, the General Partner, "it is reasonable that litigation could not be filed by Appellant until he was appointed Receiver. Otherwise, Appellant had no standing." Appellant's Brief at 34. Moreover, the Receiver asserts that Lamm, as a limited partner, could not have filed a new derivative action in or around October 2010 based on his preliminary knowledge of the Starwood LOI and the auction sale for two reasons. First, dissolution following the original action was still pending. Second, the new action "would have multiplied the proceedings seeking a remedy for the identical wrongdoing by

_____

[8] The case actually cited in the Receiver's brief, *In re CitX Corp.*, No. 03-727, 2005 WL 1388963 (E.D. Pa., June 7, 2005), *aff'd sub nom In re CitX Corp.*, 448 F.3d 672 (3d Cir. 2006), does not address a statute of limitations issue, but we understand that the Receiver intended to cite the decision set forth in the text of this opinion. We find *CitX* unpersuasive for the reasons explained by the court in *In re National Forge Co.*, 344 B.R. 340, 373-75 (W.D. Pa. 2006) (explaining that the interaction of the statute of limitations and the filing of a bankruptcy petition is governed by special provisions of the Bankruptcy Code, 11 U.S.C. § 108(a), and not by a common law tolling doctrine).

defendants to three separate lawsuits, presumably before three Judges; and all of this would be an outgrowth of an original action brought in equity — where all the issues should have been decided." Appellant's Brief at 37; **see also id.** at 35 n.4. Finally, the Reciever contends that the question whether there was an exercise of due diligence in discovering the wrongdoing is a factual inquiry appropriate for a jury, and therefore the court erred in granting summary judgment on that issue. Appellant's Brief at 29-31.

We are unpersuaded by the Receiver's arguments. First, we observe that the fact that this action is brought on behalf of the Partnership by a court-appointed Receiver does not excuse the plaintiff from compliance with the applicable statute of limitations. The Revised Uniform Limited Partnership Act, 15 Pa.C.S. § 8575(b), gives "a receiver appointed by the court" the authority "to prosecute actions in the name of the limited partnership." The Act provides that even after a partnership is dissolved, remedies "against the limited partnership or its partners" may still be pursued "if an action . . . is brought on behalf of . . . the limited partnership **within the time otherwise limited by law**." **Id.** § 8575(a) (emphasis added). It follows that where, as here, an action is brought on behalf of the Partnership prior to dissolution, the case also must be brought within the applicable statute of limitations ("the time otherwise limited by law"). The Receiver provides no reason to distinguish between pre- and post-dissolution actions in this respect, and we know of none.

Generally, actions for torts must be brought within two years of when an injury is inflicted and the right to institute a suit arises. ***See*** 42 Pa.C.S. § 5524; ***Gleason v. Borough of Moosic***, 15 A.3d 479, 483 n.1 (Pa. 2011). However, "where the complaining party is reasonably unaware that his or her injury has been caused by another party's conduct, the discovery rule suspends, or tolls, the running of the statute of limitations." ***Id.*** To successfully invoke the discovery rule, a party must show "the inability of the injured, despite the exercise of due diligence, to know of the injury or its cause." ***Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.***, 468 A.2d 468, 471 (Pa. 1983) (emphasis omitted). A party fails to exercise reasonable diligence when it fails to make an inquiry when the information regarding the injury becomes available. ***Fine v. Checcio***, 870 A.2d 850, 858 (Pa. 2005). "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." ***Id.*** at 857 (citation omitted).

Whether the statute of limitations has run on a claim is a question of law for the trial court to determine; however, application of the discovery rule involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause. ***Fine***, 870 A.2d at 859. Therefore, application of the rule ordinarily must be decided by a jury. ***Id.*** "Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." ***Id.*** at 858-59 (citation

omitted). The standard of reasonable diligence is an objective one. **Morgan v. Petroleum Products Equip. Co.**, 92 A.3d 823, 829 (Pa. Super. 2014).

Here, the Partnership's limited partners, including Lamm, were aware of the existence of the LOI and plans for development of the property as early as Lenfest's deposition in August 2010. They were aware of the sale of the property (and that it was purchased by an entity owned by Lenfest) as early as October 5, 2010; Lamm himself was present at that auction. They were aware that the other party to the LOI was Starwood no later than October 11, 2010, when a copy of the LOI was produced by Lenfest. The General Partner sent a formal letter to the limited partners regarding the sale on October 18, 2010. The partners therefore should have sued with respect to these alleged wrongdoings within two years of October 18, 2010, if not earlier. As stated by the trial court:

> At that point, plaintiff was informed that defendants acquired the property, and the W Hotel/Condo LOI attached with it, which had been developed by the partnership.
>
> The culmination of this information — then in plaintiff's possession — alerted or should have alerted, plaintiff as to the alleged injury and the party who allegedly caused the injury. As a matter of law, the statute of limitations period had been triggered.

Trial Court Opinion, 10/15/15, at 9. We agree with the trial court and hold that reasonable minds could not differ on these facts. Because the Partnership, by its Receiver, did not file suit until December 19, 2012, it missed the mark by two months.

To the extent the Receiver argues that he did not appreciate the full magnitude of Defendants' wrongdoing until the Liquidating Trustee issued its Report in 2012, the discovery rule does not provide relief. A plaintiff is required to exercise reasonable diligence. Had the plaintiffs in the original action conducted an appropriate investigation, they could have uncovered the same facts that were later exposed by the report of the Liquidating Trustee. For example, despite having knowledge of the secretive development plans and the auction sale in 2010, the partners did not take the opportunity, as was their right, to review the Partnership's books at any time after 2009. They had a duty to investigate the dubious actions by Defendants and commence action in a timely manner, and they failed to do so.[9]

The Receiver correctly argues that although no Pennsylvania appellate court has recognized the adverse domination doctrine, some other courts, including some federal courts in Pennsylvania, have adopted that doctrine to ameliorate the adverse effects of the statute of limitations in selected

---

[9] For this same reason, the Receiver may not rely on the fraudulent concealment doctrine to escape the statute of limitations. That doctrine "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine*, 870 A.2d at 861 (citation omitted). To prevail, however, a plaintiff must show reasonable diligence; "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause." *Id.*

business situations. *See* Appellant's Brief at 31-34; *Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1158-59 (E.D. Pa. 1994) (applying adverse domination doctrine to claims brought by receiver for a failed financial institution alleging negligence by former directors). Some federal courts view "adverse domination" as the corporate equivalent of the discovery rule. *See In re O.E.M./Erie, Inc.*, 405 B.R. 779, 785–86 (Bankr. W.D. Pa. 2009) (citing *Farmer*, 865 F. Supp. at 1154 n.11). Like the discovery rule, adverse domination is based on the principle of an "inherently unknowable character of the injury." *See Farmer*, 865 F. Supp. at 1155 (internal quotation marks omitted).

However, insofar as we have been able to determine, all of the federal decisions that have applied the adverse domination doctrine have relied on the fact that no non-culpable party could have brought suit before the receiver or trustee was appointed because of the control the defendants exerted over the organization and others' lack of sufficient knowledge of the wrongdoing. *See, e.g.*, *Hecht v. Malvern Preparatory Sch.*, 716 F. Supp. 2d 395, 399 (E.D. Pa. 2010) (finding receiver's filing timely where "it would have been impossible for the defrauded investors to have asserted their legal rights before the [r]eceiver's appointment" (citation and brackets omitted)). As one court explained:

> Allowing adverse domination to toll the statute of limitations makes particular sense in a closely held corporation context . . . where there may only be a few shareholders who also act as the corporate entity's officers and directors. If all the shareholders/ officers and directors in the closely held corporation engaged in

some activity that harmed the corporate entity, there would be no one left to protect the interests of the corporation. The culpable individuals may then be able to continuously engage in activities that harm not only the corporation, but also the corporation's creditors while escaping liability.

*In re O.E.M.*, 405 B.R. at 785–86; *see also Farmer*, 865 F. Supp. at 1157 (predicting that Pennsylvania would employ a "complete domination" test and require plaintiffs to prove that there was no informed but not culpable person who could have previously induced the corporation to initiate suit); *In re Petters Co.*, 495 B.R. 887, 904 (Bankr. D. Minn., July 12, 2013, revised Aug. 30, 2013) (trustee must plead that his predicate creditor did not and could not have discovered the injury). These decisions hold that equity demands in such instances that the limitations period begin anew.

With this understanding of the way courts have applied the adverse domination doctrine, we conclude that even if the doctrine were adopted in Pennsylvania, it would not be applicable to this case. The Receiver here, Lamm, was a limited partner, involved since 2000, and a named plaintiff in the prior litigation. He knew about the October 2010 actions of Defendants and could have learned any details regarding their alleged misconduct by conducting a diligent investigation. It would not be inequitable to apply the normal statute of limitations rules to these facts.

Lamm does not provide a satisfactory explanation of why he could not have brought these claims earlier. He learned about the auction sale and the Starwood project in October 2010, while his original action before Judge Bernstein was still pending, and he could have sought to add claims based

on those matters to that case by an amendment of his complaint. *See* Pa.R. Civ.P. 1033 (an "amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense"). Or, as Judge Glazer noted, he could have filed a separate derivative action under the Revised Uniform Limited Partnership Act, 15 Pa. C.S. § 8591.[10] Lamm claims he would not have had standing to bring such an action, but he cites no legal authority to support his argument. The Act provides that to bring the action, a plaintiff "must be a partner at the time of bringing the action and . . . at the time of the transaction of which he complains," 15 Pa.C.S. § 8592(a)(1), and Lamm met those criteria. We note that derivative actions exist as a practical check against abuse for personal gain by management,[11] the type of misconduct that Lamm and the limited partners claim here.

---

[10] Section 8591 provides: "A limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those general partners to bring the action is not likely to succeed. The derivative action may not be maintained if it appears that the plaintiff cannot fairly and adequately represent the interests of the limited partners in enforcing the rights of the partnership."

[11] *See* Daniel P. Dwyer, *The Rights of Shareholders, Limited Partners and Non-Managing Limited Liability Company Members in Corporate Governance Disputes: Derivative Actions in Pennsylvania*, 84 Pa. Bar Ass'n Q. 47, 48 n.1 (2013) (citing **Cohen v. Beneficial Industrial Loan Corp.**, 337 U.S. 541, 547-48 (1949)).

For these reasons, we hold that the Receiver may not use the adverse domination doctrine to excuse his failure to bring suit within the limitations period. In light of this holding, we state no view as to whether the adverse domination doctrine should be adopted as the law of Pennsylvania in an appropriate case. Because the statute of limitations was not tolled, the trial court did not err in dismissing Appellant's claims as filed outside of the time prescribed by law.

The Law of the Case

The Receiver next argues that because Judge Bernstein ordered him to file suit within ninety days of September 20, 2012, Judge Glazer was precluded by the law of the case doctrine from dismissing this action on statute of limitations grounds. Appellant's Brief at 35-37. He claims "it was the height of unfairness for Judge Glazer to punish Appellant for being obedient to the ruling of Judge Bernstein." *Id.* at 35 n.4. We do not agree with this characterization of Judge Glazer's decision.

The law of the case doctrine is comprised of three rules:

(1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995); *accord Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003). Within this doctrine lies the directive that "judges sitting on the same court in the same case should not overrule each other's decisions," otherwise known as the "coordinate jurisdiction rule." *Commonwealth v. Daniels*, 104 A.3d 267, 278 (Pa. 2014).

The purposes behind the law of the case doctrine and the coordinate jurisdiction rule are "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Starr*, 664 A.2d at 1331 (citation omitted). Only in exceptional circumstances, such as "an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed," may the doctrine be disregarded. *Id.* at 1332.

To determine whether the law of the case doctrine applies, a court must examine the rulings at issue in the context of the procedural posture of the case. *Stein v. Magarity*, 102 A.3d 1010, 1017 (Pa. Super. 2014). The coordinate jurisdiction rule does not apply where the motions ruled upon are

of a different type. **Hunter v. City of Phila.**, 80 A.3d 533, 536 (Pa. Cmwlth. 2013).[12]

Judge Glazer did not violate the law of the case doctrine. The order of September 20, 2012, which was entered by Judge Bernstein during the original **Lamm** litigation, reads in relevant part as follows:

1. The Motion to Accept the [Liquidating Trustee's] Final Report is GRANTED.[1]

2. Eric D. Freed is removed as Liquidating Trustee and David S. Lamm is appointed Receiver for Mariner Chestnut Partners, L.P. (the "Partnership") to pursue litigation on behalf of the Partnership based on the claims identified in the Trustee's Report.

3. The Receiver shall file any such litigation on behalf of the Partnership within ninety (90) days of the date of entry of this Order

4. If the Receiver fails to timely file such litigation, the Partnership shall be dissolved immediately by the Receiver and all assets distributed in accord with the Partnership Agreement.

5. If the Receiver timely files such litigation, upon termination of the litigation, the Receiver's attorneys' fees and costs shall be paid first out of any damages awarded. The remainder of the damages, if any, shall be distributed to the partners in accord with the Partnership Agreement, or as ordered by the court in which the litigation is filed, and immediately thereafter the Partnership shall be dissolved by the Receiver.

---

[12] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." **NASDAQ OMX PHLX, Inc. v. PennMont Secs.**, 52 A.3d 296, 308 n.7 (Pa. Super. 2012) (citation omitted).

_____

[1] The Report was not the result or subject of any adversary proceeding. The court makes no factual findings based on the Report. The court notes that certain information was not voluntarily provided by a non–party corporate entity which could not be subpoenaed.

*Lamm* Order, 9/24/12. Judge Bernstein explained that he appointed the Receiver specifically to allow for litigation based on the claims discussed in the Report of the Liquidating Trustee. *Lamm* Revised Opinion, 11/5/12, at 2.[13] The pursuit (or abandonment) of all litigation regarding the Partnership was a necessary step to accumulating all assets of the Partnership prior to its dissolution. The court stated:

> So that this matter, which has already been in litigation for three and one half years, not remain interminably dormant, the Court ordered that litigation based on the potential claims identified in the Liquidating Trustee's final report must be filed within 90 days or the partnership shall be immediately dissolved and all remaining assets distributed in accord with the partnership agreement.

*Id.* at 3.

To prevail on his law-of-the-case argument, the Receiver must interpret Judge Bernstein's order as setting forth a requirement that the statute of limitations be extended so that it could not expire until after the

_____

[13] "Based on the report of the liquidating trustee a reasonable basis exists for litigation to be pursued. The Court reasonably appointed a limited partner who feels aggrieved and is willing to personally fund and pursue this litigation on behalf of the partnership." *Lamm* Revised Opinion, 11/5/12, at 3.

end of the 90 days that Judge Bernstein gave the Receiver to file suit. But Judge Bernstein had no authority to do that. The Judicial Code provides:

> **(a) General rule.—**Except as provided in section 1722(c) (relating to time limitations) or in subsection (b) of this section, the time limited by this chapter **shall not be extended by order, rule or otherwise**.
>
> **(b) Fraud.**—The time limited by this chapter may be extended to relieve fraud or its equivalent, but there shall be no extension of time as a matter of indulgence or with respect to any criminal proceeding.

42 Pa.C.S. § 5504 (emphasis added). This section expressly prohibits judicial extensions of the time to commence an action. *Aivazoglou v. Drever Furnaces*, 613 A.2d 595, 598 (Pa. Super. 1992). Although Judge Bernstein acknowledged that Lenfest and Chestnut Property concealed wrongdoings in 2010, he did not make any finding of fraud under Section 5504(b) that would allow him to extend the statute of limitations.

In fact, Judge Bernstein's order did not address the statute of limitations at all. It merely set an outside deadline within which to file viable new claims. Plaintiffs were still constrained by the rules of law under which it would be determined whether those claims would be viable, including any applicable statutes of limitations. Judge Bernstein did say he thought there was a "reasonable basis" for the Receiver to pursue further litigation, but he did not make any factual finding based on the Liquidating Trustee's report, a legal ruling on the merits of the potential claims, or an assessment of the timeliness of any claims.

Judge Bernstein's actual rulings were limited to the following: the *Lamm* plaintiffs' claims for damages were dismissed, a receiver was appointed, and dissolution of the Partnership was ordered to occur. Nothing in Judge Glazer's later decisions disturbed those rulings. Accordingly, the Receiver's argument based on the law of the case doctrine is without merit.

**Continued or Separate Case, and Issue or Claim Preclusion**

The Receiver's final argument is that the issues in the instant case were timely raised in the first *Lamm* action, and that this case is a continuation of that earlier one and therefore should not be subject to a new limitations period. Appellant's Brief 37-40.

With respect to the instant action, the Receiver points to the footnote in Judge Glazer's opinion stating —

> Assuming *arguendo* that plaintiff's claims were not barred by the statute of limitations, [D]efendants' motion still would have been granted due to collateral estoppel and res judicata. Based on J. Bernstein's and the Superior Court's holdings in the related underlying litigation, the fundamental issues raised by plaintiff have already been litigated, decided, and affirmed on appeal.

Trial Court Opinion, 10/15/15, at 10 n.10. The Receiver agrees with the trial court that "the fundamental issues" of the instant case were raised in the previous *Lamm* litigation, and he therefore concludes that they are not barred by the statute of limitations. But the Receiver disagrees with the trial court's statement that the issues in the instant case were decided in the first *Lamm* action and that the Receiver's claims therefore are barred by collateral estoppel or res judicata. Appellant's Brief at 37-40.

At the outset, we note that the Receiver cannot have it both ways. As discussed above, if this is a new case then the statute of limitations bars the Receiver's claims. The mere fact that this new case may somehow be an outgrowth of litigation that preceded it does not make the statute of limitations inapplicable. *See Daley v. A.W. Chesterton, Inc.*, 37 A.3d 1175, 1190 (Pa. 2012) (holding plaintiff may file second or subsequent action for asbestos-related disease, as long as that action "is based on a separate and distinct [asbestos-related] disease which was not known to plaintiff at the time of his first action, **and is filed within the applicable statute of limitations period**" (emphasis added)); *Royal-Globe Ins. Cos. v. Hauck Mfg. Co.*, 335 A.2d 460, 462 (Pa. Super. 1975) ("if a plaintiff mistakes his remedy . . . and, during the pendency of the action, the limitation runs, the remedy is barred" (citation omitted)); *see also Williams Studio Div. v. Nationwide Mut. Fire Ins. Co.*, 550 A.2d 1333, 1335-37 (Pa. Super. 1988), *appeal denied*, 588 A.2d 510 (Pa. 1990).[14]

This case either presents new claims subject to a new limitations period, or it does not. In much of his briefing, the Receiver argues that this case is truly new because he filed it pursuant to Judge Bernstein's directive.

---

[14] As discussed in the text, the first **Lamm** action ended with a judgment on the merits that was affirmed by this Court. Therefore, the Pennsylvania savings statute, which removes a limitations defense if an action is refiled within one year after its termination by a disposition **other than** "a final judgment on the merits" has no application here. **See** 42 Pa. C.S. § 5535(a)(1).

- 34 -

***See, e.g.***, Appellant's Brief at 28 (claiming plaintiffs did not discover the wrongdoing that forms the basis of their new suit until the Liquidating Trustee's Report was published in July 2012), 34 (referring to a "requirement that a new action was needed"). That should be the end of the matter. The Receiver's concomitant argument that this case is merely a "bifurcated" continuation of the original ***Lamm*** litigation that was litigated to judgment in 2012 (and, therefore, is not subject to a new limitations period), ***see, e.g.***, ***id.*** at 37-40, contradicts the Receiver's other arguments that this is a new case.

In our view, the Receiver did indeed file this action as a new case. As he emphasizes, Judge Bernstein appointed him to pursue litigation based on the claims identified by the Liquidating Trustee's Report. The wrongdoing identified in that Report related to the secret Starwood development plans and the sale of the Chestnut Street property in 2010, all of which took place well after the initiation of the original ***Lamm*** suit. No one amended the complaint in that original suit to add claims based on that wrongdoing. Judge Bernstein did not consider this alleged new wrongdoing as a factual basis for potential relief on the tort claims in the original ***Lamm*** litigation; instead, he referenced it only when granting the request for dissolution. In his order appointing the Receiver, Judge Bernstein specified that he was not making a factual finding based on the Liquidating Trustee's Report, and therefore was not resolving the merits of these issues. Thus, to the extent that the facts

supporting the instant case are new and were not used as the basis for substantive relief in the original *Lamm* action, this is a new case and not part of the old one, and the statute of limitations bars it.

We recognize that there is some overlap between the facts and claims in the two cases. But this overlap cannot save the Receiver's claims. Rather, as Judge Glazer pointed out, to the extent any part of this new litigation may be considered a reassertion of parts of the earlier *Lamm* case, it is barred by the judgment entered in that earlier action.

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies." *Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1194 (Pa. Super. 1994). The doctrine therefore forbids further litigation on "all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein." *Id.* (citation and brackets omitted). Similarly, "The doctrine of collateral estoppel or issue preclusion prevents a question of law or an issue of fact that has once been litigated and fully adjudicated in a court of competent jurisdiction from being relitigated in a subsequent suit." *Meridian Oil & Gas Enters., Inc. v. Penn Cent. Corp.*, 614 A.2d 246, 250 (Pa. Super. 1992) (citation omitted).

In the original *Lamm* action, all claims were litigated to a final judgment that was affirmed by this Court on appeal. Lenfest and Chestnut

Property prevailed in that case on the claims brought against them for breach of fiduciary duties and breach of the Partnership Agreement. Therefore, to the extent that the Receiver now argues that the instant claims are the same as those in the original **Lamm** action or are part of the same cause of action as what was litigated in that case, the doctrines of claim and issue preclusion apply and the Receiver can no longer recover on these claims. **See Hopewell Estates**, 646 A.2d at 1194.

Accordingly, for all of these reasons, we affirm the trial court's grant of summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2016