**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1246
_____

LAWRENCE EBURUOH,
                                    Appellant

v.

WELLS FARGO BANK, N.A., other Wachovia Bank, N.A.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:20-cv-06188)
District Judge:  Honorable Joel H. Slomsky
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 19, 2022
Before:  MCKEE, SHWARTZ, and MATEY, Circuit Judges

(Opinion filed September 26, 2022)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lawrence Eburuoh, proceeding pro se, appeals from the District Court's order denying reconsideration of an order dismissing his complaint. We will affirm the District Court's judgment.

I.

Eburuoh purchased a property in Upper Darby, Pennsylvania, in 2008, which he financed with a mortgage that came to be held by Wells Fargo Bank ("Wells Fargo"). In March 2017, Eburuoh began missing his mortgage payments. Wells Fargo mailed him a notice of intent to foreclose in July 2017. Meanwhile, in June 2017, a car had crashed into and damaged the property. Eburuoh filed an insurance claim and, in January 2018, the insurance company issued a check for over $30,000, made out to both Eburuoh and Wells Fargo. After Eburuoh received this check, he endorsed it, then forwarded it to Wells Fargo to do likewise, so that Eburuoh could use the money to repair the damage to the property. Eburuoh said that he "began calling and emailing and calling Wells Fargo" to ask for the insurance money's release, "[a]ll to no avail." Compl. 2, ¶ 12, ECF No. 1.

In April 2018, Wells Fargo initiated a foreclosure action in the Delaware County Court of Common Pleas that resulted in a judgment of foreclosure on Eburuoh's property. See Wells Fargo Bank, N.A. v. Eburuoh, No. 2018-002919 (Del. Cnty. Ct. Com. Pl. Oct. 16, 2018). Eburuoh did not appeal that judgment, and the property was later sold at a sheriff's sale. In October 2020, two years after the foreclosure judgment, Wells Fargo sent Eburuoh a letter stating that it had erroneously over-reported the amount of canceled

2

debt associated with his mortgage to the Internal Revenue Service, because the figure had not considered the insurance money, which Wells Fargo had apparently held in an escrow account since receiving the check.

In December 2020, Eburuoh filed this suit against Wells Fargo in the Eastern District of Pennsylvania, lodging four claims: fraudulent foreclosure, common-law fraud, intentional infliction of emotional distress ("IIED"), and fraudulent misrepresentation. The first three claims centered on the allegation that Wells Fargo intentionally withheld the insurance money to force Eburuoh into foreclosure. The fraudulent misrepresentation claim related to correspondence between a Wells Fargo representative and Eburuoh's attorneys about a possible alternative to foreclosure, which, he argued, "helped to disarm [Eburuoh] from mounting any meaningful defense to foreclosure" in the state-court proceedings. Compl. 7, ¶ 42.

Wells Fargo filed a motion to dismiss Eburuoh's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that the District Court lacked subject-matter jurisdiction under the Rooker-Feldman[1] doctrine; or, in the alternative, that Eburuoh's complaint failed to state a claim for relief. The District Court granted the motion, holding that Eburuoh's fraud claims were barred by res judicata and that he had not pleaded sufficient facts to state an IIED claim. Eburuoh timely filed a

---

[1] See Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983).

motion for reconsideration, which the District Court denied.  Eburuoh appeals.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  Because Eburuoh's appeal from the District Court's denial of his timely motion for reconsideration "brings up the underlying judgment for review," we will review both orders.  See McAlister v. Sentry Ins. Co., 958 F.2d 550, 552–53 (3d Cir. 1992).  We review the grant of a motion to dismiss under Rule 12(b)(6) de novo.  See Newark Cab Ass'n v. City of Newark, 901 F.3d 146, 151 (3d Cir. 2018).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (citations and quotation marks omitted).  We review the denial of a motion for reconsideration for abuse of discretion.  See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).  We may summarily affirm "on any basis supported by the record" if the appeal fails to present a substantial question.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

We agree with the District Court that Eburuoh's fraud claims are barred by res judicata, also known as claim preclusion.[2]  Federal courts to look to the rendering state's law to determine the preclusive effect of a prior state judgment.  See Sec'y United States

---

[2] We decline to employ the Rooker-Feldman doctrine in this case for substantially the same reasons as the District Court.  See Dist. Ct. Op. 6 n.2; see also Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 277 (3d Cir. 2016) (holding that courts can apply claim

4

Dep't of Lab. v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017). Thus, we look here to the preclusion law of Pennsylvania, which "bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006) (quotation marks and citations omitted). Claims will be barred whether they were actually litigated or could have been litigated in the prior action. See Mariner Chestnut Partners, L.P. v. Lenfest, 152 A.3d 265, 286 (Pa. Super. Ct. 2016).

Eburuoh does not challenge the conclusion that the basic elements of res judicata are satisfied here. Rather, he asserts that res judicata cannot bar his fraud claims because they could not have been litigated in the foreclosure action. He argues that until he received Wells Fargo's October 2020 letter indicating that the insurance money had been held in escrow, he had not discovered the alleged fraud in withholding the money from him. This argument is unavailing. Eburuoh was in default on his mortgage before the car accident that led to the insurance payment and was on notice of Wells Fargo's intent to foreclose months before he received the insurance check. According to the allegations in his complaint, the check was issued to him, endorsed by him, and sent to Wells Fargo before the initiation of the foreclosure action. He claimed that he began "emailing and

preclusion before deciding their jurisdiction).

calling" them about releasing the money after sending it for their endorsement. Eburuoh's pleadings therefore support the District Court's conclusion that, as to the first two fraud counts, "the events involving the auto crashing into the property, the insurance payment, and the sending, receiving, and keeping of the check by Wells Fargo were relevant to the outcome of the foreclosure action and could have been raised as a defense in that state court action." Dist. Ct. Op. 14. Similarly, his argument that the application sent to his attorneys by Wells Fargo fraudulently misrepresented the availability of an alternative to foreclosure, forming the basis of his fourth claim, could have been raised during those proceedings. See Id. at 14–15. These three claims are precluded.

As to Eburuoh's IIED claim, we agree with the District Court that he failed to state a claim for relief because he did not plead that he suffered any physical harm, nor did he identify any conduct "so outrageous in character" and "extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Reedy v. Evanson, 615 F.3d 197, 231–32 (3d Cir. 2010) (quoting Field v. Phila. Elec. Co., 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

Finally, the District Court did not abuse its discretion in denying reconsideration. Eburuoh merely re-argued his entitlement to relief on his fraud claims, and did not demonstrate there was "an intervening change in controlling law[,] the availability of new evidence[,] or . . . the need to correct clear error of law or prevent manifest injustice," warranting reconsideration of the District Court's dismissal of those claims. Lazaridis v.

6

Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).  Though Eburuoh argued that he should have been provided an opportunity to amend his IIED claim, we agree with the District Court that such amendment would have been futile, and we conclude that dismissal without leave to amend was proper.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

Accordingly, we will affirm the judgment of the District Court.