J-A23029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOSEPH C. POSH AND DOUGLAS D. KELLY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| RAMI NASSAR AND SPRINGHOUSE ROAD PARTNERSHIP, LLC AND ST. GEORGE ANTIOCHIAN ORTHODOX CHURCH, | |
| Appellees | No. 37 EDA 2017 |

Appeal from the Order Entered November 23, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s): 2015-C-0097

_____

| | |
|---|---|
| JOSEPH C. POSH AND DOUGLAS D. KELLY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| RAMI NASSAR AND SPRINGHOUSE ROAD PARTNERSHIP, LLC AND ST. GEORGE ANTIOCHIAN ORTHODOX CHURCH | |
| APPEAL OF ST. GEORGE ANTIOCHIAN ORTHODOX CHURCH | |
| | No. 434 EDA 2017 |

Appeal from the Order Entered November 23, 2016
In the Court of Common Pleas of Lehigh County
Civil Division at No(s):  2015-C-0097

BEFORE: PANELLA, DUBOW, and FITZGERALD,* JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED NOVEMBER 30, 2017**

Appellants/Cross-Appellees, Joseph C. Posh and Douglas D. Kelly (collectively "Posh"), filed a declaratory judgment action requesting clarification of its rights and duties concerning a tract of land adjacent to a tract owned by Appellee/Cross-Appellant, St. George Antiochian Orthodox Church ("Church"). Church filed a counterclaim seeking monetary damages for Posh's failure to provide services and improvements for Church's tract, which Church claimed Posh was required to do under an option agreement incorporated by reference within Posh's deed. The trial court granted Church's motion for summary judgment on Posh's declaratory judgment action and dismissed the entire action, including Church's counterclaim, with prejudice. Posh appealed to this Court at 37 EDA 2017. Church cross-appealed at 434 EDA 2017, arguing that the trial court erred by refusing to address its counterclaim for monetary damages.

We conclude that res judicata bars Posh's declaratory judgment action, because Posh's rights and duties were determined in a prior quiet title action between the parties. We also agree with the trial court that the proper setting for determining Church's claim for money damages is post-judgment

_____

* Former Justice specially assigned to the Superior Court.

- 2 -

proceedings in the quiet title action, not the present declaratory judgment action. Accordingly, we affirm in both 37 EDA 2017 and 434 EDA 2017.

There are two tracts of land at issue in this litigation: one owned by Posh and the other owned by Church. Those tracts previously belonged to a single tract of land totaling approximately 22.67 acres that was owned by the Friends of St. George Orthodox Church, Inc. ("Friends"). Posh R.R., at 55a[1] (Trial Ct. Order, No. 2009-C-1964, 12/30/11). Friends determined it only needed approximately ten of those acres to build the church and related buildings they intend to construct. *Id.* Rami Nassar expressed an interest to acquire, or subdivide and arrange for others to acquire, the balance of the property not needed by Friends for Church and related properties. *Id.* Nassar proposed that the subdivided property would include at least one tract upon which the church and related buildings would be built ("Church Area"), while Nassar would take the other tract for ownership, sale or further subdivision ("Excess Area"). *Id.*

In 1998, Nassar and Friends entered into an Option Agreement in to memorialize the parties' respective rights, responsibilities, and obligations in relation to the two tracts. *Id.* at 56a. The Option Agreement stated that Nassar "and his permitted successors and permitted assigns," whom the Option Agreement collectively labeled the "OPTIONEE", were obligated to

---

[1] Whenever possible, we refer to Posh's and Church's reproduced records for the convenience of the parties.

"provide and/or pay for all engineering and review costs for the subdivision of the Property." Posh R.R. 32a ("Option Agreement"). These obligations included "providing line drawings showing 'foot print' of all buildings, walks, parking lots, roads and other improvements, utility service lines and determination of adequate drainage sizing and to use the plans of the architect for the Church for all design requirements." *Id.*

Section 3.2 of the Option Agreement stated that "Optionee" must "construct and provide" access to the Church Area "at no cost nor expense to Friends or their successors and assigns or the future owners of the Church Area." *Id.* at 33a. Section 5.2 continued:

> OPTIONEE [Nassar] or his successors or assigns [Posh] shall construct and provide, at no cost nor expense to FRIENDS or their successors and assigns or the future owners of the Church Area, all of the utilities necessary for use of the Church Area, all roadway(s) from the Church Area to Springhouse Road as shall be shown on any plan for the subdivision of the Property, and appropriate and adequate sized connection from the Church to and through the Excess Area and to any municipal or other terminal point for all utilities and drainage systems.

*Id.* at 35a-38a.

Under the Option Agreement, the Friends' land was subdivided into two lots. *Id.* at 56a. Friends conveyed the Church Area to Church and the Excess Area to Nassar's limited liability company, Springhouse Road Partnership, LLC ("Springhouse"). *Id.* To ensure the Church Area would continue to enjoy the benefits of the Option Agreement from whomsoever

owned the Excess Area, the deed to Springhouse (the "Springhouse Deed")

contained the following language:

> UNDER AND SUBJECT TO the obligations upon Rami Nassar, his successors and assignees as set forth in [the Option Agreement] between GRANTOR and Rami Nassar (the assignee to GRANTEE) the said obligations and restrictions of the same agreement being incorporated herein by reference, and under and subject to the restrictions and obligations set forth on the aforesaid Plan of subdivision.

*Id.* ("Encumbrance Clause").

On January 9, 2006, Springhouse conveyed the Excess Area to Posh in

a deed which contained the same Encumbrance Clause language. *Id.* On

the same date, however, Posh entered into an Indemnification Agreement

with Nassar and Springhouse which provided—in conflict with the

Springhouse Deed and their own deed—that the obligations in the Option

Agreement were only obligations of Nassar and Springhouse but not of Posh.

*Id.* at 60a. In addition, the Indemnification Agreement provided that Nassar

would indemnify Posh for any claims "arising from or in any way, directly or

indirectly, associated with or the result of the obligations of Rami Nassar

and/or Springhouse Road Partnership, LLC under the Agreement dated

September 30, 1998," i.e. the Option Agreement. *Id.* at 61a. Springhouse

and Nassar further agreed to try to convince Church to "remov[e] the

obligations under the [Option] Agreement . . . from the chain of title to the

Property." *Id.*

On April 17, 2009, Posh commenced a quiet title action against Springhouse alleging that they were "unable to determine the nature of the obligations or restrictions required under the [Option] Agreement," thus creating a "cloud" which "ostensibly encumbers [Posh's] interest in the Subject Property . . ." Church R.R. at 65b. Posh argued that only Nassar, as the party to the Option Agreement, and not subsequent landowners like Posh, were obligated by any provision of the Option Agreement. Posh R.R. at 55a-58a.

Friends and Church intervened as defendants in the quiet title action. Following a bench trial, the trial court found that because the Springhouse Deed "made a clear reference to the [Option Agreement], subsequent purchasers, including Posh [], were bound by its terms." *Id.* at 57a. The court also recognized that the same language appeared in the Posh Deed, thereby providing Posh with actual notice of the Option Agreement. *Id.* In fact, the trial court specifically found that "Posh [] admitted to having received a copy of the [Option Agreement] before . . . settlement, thus giving them actual knowledge of its terms." *Id.* The court summarized in part Posh's obligations, which are expressly set forth in detail in the Option Agreement, to include the obligation to "provide services and improvements, including the installation of utility services and storm-water drainage or detention systems, to the adjoining property retained by Friends for its church and related purposes." *Id.* at 55a-56a.

Posh filed an appeal to this Court, which quashed the appeal due to Posh's failure to file post-trial motions.[2] **See Posh v. Springhouse Road Partnership, LLC,** 402 EDA 2012 (Pa. Super., Mar. 19, 2012) (order). Posh did not file another appeal, and Posh admits that the decision in the quiet title action "is the law of this case and is not at issue." Posh's Brief at 6.

On January 9, 2015, Posh filed a second action seeking a declaratory judgment. Rather than honoring their obligations under the Option Agreement, as the trial court found they must, Posh continued their campaign "to determine the rights, obligations, and benefits resulting from inclusion of the Encumbrance Clause in the Posh[] deed." Posh R.R. at 10a. Posh sought a declaratory judgment that:

> [o]bligations to provide personal services are not obligations that run with real property interests, and that any and all obligations to provide personal services, including engineering and design services, owed to [Church] as a result of the Option Agreement are obligations owed by Nassar, or Springhouse[], to [Church] and are not obligations owed by [Posh] to [Church]; and that [Posh] has no obligations to provide personal services, including engineering and design services, to [Church].

*Id.* at 10a-11a. Church filed a responsive pleading asserting, *inter alia*, the defense of res judicata. *Id.* at 65a-76a. Church also filed a counterclaim for monetary damages for costs and services that Posh was required to provide under the Option Agreement. *Id.*

---

[2] It also appears that Posh failed to enter judgment on the verdict before appealing, but according to the trial court, judgment was subsequently entered in the quiet title action. **See** Trial Ct. Op., 2/28/17, at 11.

Church moved for summary judgment on the ground that the judgment in the prior quiet title action barred Posh's declaratory judgment under the doctrine of res judicata. Church R.R. at 19b-26b, 222b-34b. Church also moved for summary judgment on its counterclaim for monetary damages. *Id.* In support of this motion, Church submitted an expert report estimating that Posh must provide costs and services in an amount between $1,802,580.00 and $1,892,799.00. Church R.R. at 199b-207b. Church did not actually perform such services or pay such costs. *Id.*

On November 23, 2016, the trial court ordered that "summary judgment is granted . . . in favor of [Church] and against [Posh], and the within matter is dismissed." Both Posh and Church filed timely cross-appeals and timely Pa.R.A.P. 1925(b) statements. The trial court issued an opinion reasoning that the res judicata doctrine barred Posh's declaratory judgment action. Trial Ct. Op., 2/28/17, at 11. With regard to Church's counterclaim, the court stated:

> In granting summary judgment, the [c]ourt expressly noted [Posh is] bound to comply with the terms of the Option Agreement . . . Moreover, because the [c]ourt struck the instant matter on the procedural grounds that res judicata barred [Posh] from pursuing it, any relief stemming to [Posh's] noncompliance with the Option Agreement would be in the form of a motion seeking to enforce the judgment entered in the 2009 matter. The [c]ourt did not place the burden of completing the tasks set forth in the Option Agreement on [Church], and [Church] has not actually performed the work such that it would be able to advance a claim for reimbursement at this juncture.

*Id.* 12-13.

Posh raises a single issue in the appeal at 37 EDA 2017:

Does the doctrine of res judicata bar the relief sought by [Posh] in this declaratory judgment action as a matter of law?

Posh's Brief at 4.

Church raises a single issue in its appeal at 434 EDA 2017:

Whether the Court erred or abused its discretion when it denied that aspect of . . . [Church's] Motion for Summary Judgment on its counterclaim requesting monetary damages—in the uncontested amount necessary to make improvements to its land—where, *inter alia*, (i) [Posh has] obdurately refused for over [ten] years to provide those services, despite a prior judgment already confirming their obligation to do so, and (ii) [Church] submitted an unrebutted expert report establishing the cost of making those improvements.

Church's Brief at 2.

Our review is governed by the following principles:

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party.  In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt.  On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion.  But the issue as to whether there are no genuine issues as to any material fact

> presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citations and quotation marks omitted).

It is well-established that

> [w]here the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Further, failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Truax v. Roulhac*, 126 A.3d 991, 997 (Pa. Super.) (*en banc*) (citation and quotation marks omitted), *appeal denied*, 129 A.3d 1244 (Pa. 2015).

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies." *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 286 (Pa. Super. 2016) (citations and quotation marks omitted). The "doctrine therefore forbids further litigation on all matters which might have been raised and decided in the former suit, as well as those which were actually raised therein." *Id.*

In the present declaratory judgment action, Posh requested that the trial court "determine the rights, obligations, and benefits resulting from inclusion of the Encumbrance Clause in the Posh[] deed." Posh R.R. at 10a.

This is the same issue that Posh raised in the quiet title action, where Posh alleged that they were "unable to determine the nature of the obligations or restrictions required under the [Option] Agreement," thus creating a "cloud" which "ostensibly encumbers [Posh's] interest in the Subject Property . . . Church R.R. at 65b. Moreover, the trial court determined the nature of Posh's obligations in the quiet title action; its verdict stated that Posh had the duty to "provide services and improvements, including the installation of utility services and storm-water drainage or detention systems, to the adjoining property retained by Friends for its church and related purposes." Posh R.R. at 55a-56a. Indeed, Posh admits that the decision in the quiet title action "is the law of this case and is not at issue." Posh's Brief, at 6. Because Posh's duties and obligations were both raised and decided in the quiet title action, Posh's declaratory judgment action is nothing more than a second action on the same matter between the same parties. The trial court correctly decided on this record that res judicata precludes Posh's declaratory judgment action. *See Mariner Chestnut Partners*, 152 A.3d at 286.

Turning to Church's cross-appeal, we agree with the trial court's determination that the quiet title action is the proper setting to determine the issue of Church's damages. In a quiet title action, the court may, in addition to entering judgment, "enter any other order necessary for the granting of proper relief." Pa.R.C.P.1066(b)(4). In our view, this broad

language encompasses post-judgment monetary relief necessary to enforce the judgment. *See Tioga Coal Co. v. Supermarkets General Corp.*, 589 A.2d 242, 244 (Pa. Super. 1989) (implicitly acknowledging that party had right to seek money damages in quiet title action, but ultimately holding that chancellor acted within his discretion by denying damages).

As noted above, the trial court determined in the quiet title action that Posh has the duty to "provide services and improvements, including the installation of utility services and storm-water drainage or detention systems, to the adjoining property retained by Friends for its church and related purposes." Posh R.R. at 55a-56a. Church may enforce its judgment against Posh in the quiet title action by seeking the post-judgment remedies of specific enforcement of the foregoing terms or damages necessary to enforce the judgment. It would needlessly duplicate litigation for Church to seek such relief in the present action instead of in the quiet title proceedings.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2017

- 12 -