J-S18016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARK FORKAL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDOLPH FORKAL | : | |
| | : | |
| Appellant | : | No. 1363 MDA 2021 |

Appeal from the Order Entered September 22, 2021
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s): 2007-01140-CP

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:  **FILED OCTOBER 12, 2022**

Randolph Forkal ("Randolph") appeals from the order holding him in contempt for failure to pay the remaining amount due on his successful bid for realty in a private 2018 sale and awarding the realty to the next highest bidder, Mark Forkal ("Mark"). We affirm.

This case has been before this Court several times and has a long and convoluted history. In our most recent decision, we summarized the factual and procedural background as follows:

> The parties are brothers, and this action involves two non-contiguous tracts of farmland devised to the brothers by their mother, Virgie Forkal, who passed away in October of 2002. One tract covered 137 acres, including 90 acres of tillable land ("the 137-acre plot"). The other covered 197 acres, including 60 acres of tillable land and a dairy barn with 95 stalls ("the 197 acre plot," and, collectively with the 137-acre plot, ["the Property"]). Pursuant to Mrs. Forkal's will, Mark and Randolph own the [Property] as tenants in common. Mark lived on and farmed the 137-acre plot beginning in 2003, but he claims he has not visited

the [Property] since July of 2015 because of Randolph's threats of violence. Randolph has lived on and farmed the 197-acre plot since Mrs. Forkal passed away. While they were cotenants, the parties signed separate lease agreements with different gas companies for the subsurface rights to the [Property].

Mark filed this partition action on August 10, 2007, seeking to have the [Property] equally divided between parties. He also requested fair rental value of the land and farming equipment on the 197-acre plot. Randolph filed an answer and new matter seeking payment for one-half of the value of the crops Mark raised on the 137-acre plot and payment for caring for cattle that Mark owned. The trial court appointed a master, who concluded the [Property] could not be equally divided between the parties. The trial court denied Randolph's exceptions to the master's report, and this court affirmed. *Forkal v. Forkal*, 1485 MDA 2012 (Pa. Super. May 15, 2013) (unpublished memorandum). Thereafter, the parties proceeded through several private sales. The first private sale, at which Mark was the high bidder, took place on July 9, 2014. The trial court set that sale aside by order of September 15, 2014. Mark was again the high bidder at the second sale, which the trial court confirmed by order of October 27, 2015. On December 20, 2016, this Court vacated the order confirming the sale and remanded for a new valuation hearing, concluding that the trial court failed to enforce one of its own orders; that discovery was incomplete; and that the master failed to serve on the parties its petition to proceed with the private sale. *Forkal v. Forkal*, 2053 MDA 2016 (Pa. Super. December 20, 2016).

The new valuation hearing occurred on May 23, 2018. At the private sale presently at issue, conducted on September 17, 2018, Randolph was the high bidder, at $1,655,000. Mark's losing bid was $1,651,000. Randolph promptly paid a 10% deposit in accord with the master's letter describing the terms and conditions of the private sale, but failed to pay the remaining balance within 20 days, as per the master's instructions. [n. 3: In total, Randolph was required to pay half of his winning bid, or $827,500.00, in order to buy out Mark's ownership share of the surface rights.] On November 8, 2019, Mark filed a petition asking for sanctions, noting that Randolph had failed to pay his winning bid. Mark asked that Randolph's 10% payment toward his bid be forfeited and that Mark be named the winning bidder. On January 18, 2019, the trial court entered an order denying Mark's requested relief but directing [Randolph] to pay a $390,000.00 portion of the balance due on his bid within ten days. Randolph has paid that amount.

On February 7, 2019, Mark filed a petition requesting reconsideration of the January 18, 2019 order. In that petition, Mark asked, among other things, for the trial court to name him the successful bidder in light of Randolph's failure to pay his successful bid as per the court-ordered time schedule. Failing that, Mark requested a new private sale. The trial court conducted a hearing on these matters, as well as a trial on the valuation of some farm property, on February 13, 2019. On May 14, 2019, the trial court entered an order directing Randolph to pay Mark $28,475 (half the value of farming equipment in Randolph's possession); $69,700 (half the market value of Randolph's house minus a credit for real estate taxes he paid); and directing Mark to pay Randolph $10,800 (half the value of the tillable acreage on the 137-acre plot).

The parties filed competing motions challenging the May 14, 2019 order. Mark challenged, among other things, the noncompliance of the master and trial court with Pa.R.C.P. No. 1573, a matter we will discuss in more detail below. Similarly, Randolph's motion requested confirmation of the September 18, 2018 sale price. The trial court scheduled a hearing on these motions for August 7, 2019. At the hearing's conclusion, the trial court entered an order directing, among other things, the master to file a proposed order within ten days. Judgment was entered on August 14, 2019, before the master complied.

On August 7, 2019, the trial court entered an order denying the parties' competing post-trial motions, and directing the master to file a return of sale and proposed order with the prothonotary, pursuant to Pa.R.C.P. No. 1573. Judgment was entered on August 14, 2019, with no further filing from the master.

*Forkal v. Forkal*, No. 1363 MDA 2019, 2020 WL 5979730, at *1-*2 (Pa.Super. Oct. 8, 2021) (unpublished memorandum) (footnotes omitted).

Ultimately, this Court vacated the August 14, 2019 judgment and remanded the case for compliance with Pa.R.C.P. 1573(a) ("Where the sale has been conducted by a master, the master shall promptly file with the

prothonotary a return of sale together with a proposed order . . . .").

Significantly, our Court held:

> Upon review of the record, we conclude that a remand is necessary for compliance with the clear mandates of Rule 1573. The record does not reflect that the master ever filed a return of sale after the September 17, 2018 private sale. A return of sale is an obvious and necessary prerequisite to a court entering an order confirming the sale. Implicit in Rule 1573 is that payment of the proceeds be made after sale so that the master may prepare a proper return of sale and proposed court order that, *inter alia*, must direct distribution of the proceeds to persons or entities entitled to them. The trial court here never entered an order confirming the sale as is required under Rule 1573(a)(1), nor does it appear that the court would have been able to do so. **See** 122 Standard Pennsylvania Practice 2d 105 ("A sale in partition is a judicial sale. It is made under an order of the court, its subject is in the hands of the court, the proceeds are necessarily brought into court for distribution, and the whole proceeding is directly the act of the court.").

> * * *

> In summary, there is no record of the master's compliance with Rule 1573 or with the trial court's August 7, 2019 order directing the master's compliance with Rule 1573. In turn, the trial court did not and could not file an order confirming the September 17, 2018 sale. Furthermore, the record does not reflect that Mark could have received the proceeds to which he is entitled under Rule 1573(a)(4). **See** 122 Standard Pennsylvania Practice 2d 133 ("Where a sale has been conducted by a master, the master must promptly file with the prothonotary a proposed order, which must direct distribution of the proceeds to the persons or parties entitled."). Given the lack of compliance with the clear mandates of Rule 1573, we are constrained to vacate the judgment and remand for compliance with Rule 1573. **We are cognizant that Mark has asked to be named the successful bidder and/or for a new private sale. If, upon remand, Randolph is unable to pay the remaining amount due on his bid if permitted and as directed by the trial court, we leave it to the trial court's equitable discretion to determine an appropriate remedy.**

*Forkal*, 2020 WL 5979730 at *7-*9 (emphasis added, footnotes omitted).

After remand, Mark filed a petition to appoint a new master and the trial court did so on November 17, 2020. Over a year later, on July 1, 2021, Mark filed a petition to compel Randolph to pay the full amount owed on the 2018 private sale. Mark also filed a petition, on August 10, 2021, to hold Randolph in contempt of the trial court's January 18, 2019 and May 14, 2018 orders. On that same date, Mark also filed a separate petition requesting that the court award the Property to him as the second highest bidder in the 2018 sale.

After a hearing regarding the petitions on August 27, 2021, the trial court found Randolph in contempt of its January 18, 2019 order due to his failure to pay $390,000 within 10 days of that order. The trial court also found Randolph in contempt of its May 14, 2019 order due to his failure to pay $76,975 within 30 days of that order. The trial court scheduled a hearing for September 16, 2021, at which the court indicated it would consider sanctions for Randolph's contempt or whether, in the alternative, Mark's bid would now be accepted as the winning bid for the Property.

After the September 16, 2021 hearing, the trial court issued an order finding that Randolph had purged his contempt of the May 14, 2019 order by remitting a $76,975 payment on September 16, 2021. However, the court held that Randolph remained in contempt due to his inability to pay his

remaining balance on his 2018 wining bid on the property.[1] The court specifically found that Randolph could not pay the balance without obtaining financing, which would require an agreement of sale from Mark that he was not willing to provide.[2]

As a result of Randolph's inability to pay, the trial court ordered that Mark's 2018 bid on the Property would now be considered the successful bid. The Court thus required Mark to pay the full balance of his now successful bid within seven days of the order.[3] The instant timely appeal followed, and both the trial court and Randolph complied with Pa.R.A.P. 1925.

Randolph raises the following issues:

> 1). Did the lower court reach an erroneous factual and legal conclusion when it held Randolph in contempt for failure to pay $390,000.00?
>
> 2). Did the lower court commit an error of law when it sanctioned Randolph for his failure to pay the $390,000.00?

---

[1] The trial court notes that Randolph made two payments for $44,500 and $180,000 on January 28, 2019. With those two payments, the total held in escrow for the Property was $390,000. However, the court points out that the total includes the original deposit of $165,500. Thus, Randolph "only paid $224,500 of the $390,000 required in the January 28, 2019 order." Trial Ct. Pa.R.A.P. 1925(a) Op., 1/5/22 at 8 n.12. Further, Randolph still had an outstanding balance of $437,500 on his bid.

[2] The trial court reports that Randolph did not present any evidence that he attempted to obtain financing for the balance he owed on his winning 2018 bid prior to September 2021. Trial Ct. Pa.R.A.P. 1925(a) Op., 1/5/22 at 9 n.13.

[3] According to Mark, he has paid the required $825,500.

3). Did the lower court abuse its discretion by not assisting Randolph in his purchase of the [Property] and awarding relief to Mark despite Mark's unclean hands?

Randolph's Br. at 3.

In his first two issues, Randolph argues that the trial court erred by concluding that he was in contempt of its January 18, 2019 order. He claims that the court erroneously found that he had not paid the $390,000 required when the total funds he had paid into escrow totaled that amount. Further, he asserts that this Court, in our 2020 opinion regarding this matter, properly concluded that he had fulfilled his obligation as stated in our opinion: "On January 18, 2019, the trial court entered an order denying Mark's requested relief but directing [Randolph] to pay a $390,000 portion of the balance due on his bid within ten days. Randolph has paid that amount." *Forkal*, 2020 WL 5979730, at *1-*2. Thus, Randolph contends that his compliance with the January 18, 2019 order's requirement to pay the $390,000 should be considered "the law of the case." Randolph's Br. at 23.

Further, Randolph claims that the trial court erroneously required him to pay the full remaining balance of his 2018 bid in order to avoid contempt. Hence, he asserts that the trial court's sanction of awarding Mark the Property by designating his bid as the winning bid of the 2018 private sale violated his due process rights as he had no reason to know that he would have to pay the balance of his bid to avoid losing the Property.

We review an order holding a party in contempt for an abuse of discretion. *Harcar v. Harcar*, 982 A.2d 1230, 1234 (Pa.Super. 2009). "The

court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason." *Id*. (citation omitted). "Each court is the exclusive judge of contempt against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) (quoting *Langendorfer v. Spearman*, 797 A.2d 303, 307 (Pa.Super. 2002)).

"To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Lachat v. Hinchliffe*, 769 A.2d 481, 489 (Pa.Super. 2001). To be punished for the contempt, the order must have been "definite, clear, specific – leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." *Id*. at 488-89 (quoting *Marian Shop, Inc. v. Baird*, 670 A.2d 671, 673 (Pa.Super. 1996)) (emphasis removed).

The "law of the case" doctrine includes the following rules, which, when applicable, forbid a court from overruling itself or a higher court:

> (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction,

> the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.

*Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995); *accord Zane v. Friends Hosp.*, 836 A.2d 25, 29 n.6 (Pa. 2003).

The doctrine prohibits a court involved in later phases of a matter from reopening "questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Ario v. Reliance Ins. Co*., 980 A.2d 588, 597 (Pa. 2009). A court "must examine the rulings at issue in the context of the procedural posture of the case," to determine the applicable law of the case. *Mariner Chestnut Partners, L.P. v. Lenfest*, 152 A.3d 265, 282-83 (Pa.Super. 2016).

Here, the trial court was well within its purview when finding Randolph in contempt. The clear language of the January 2019 order required Randolph to make a payment of $390,000 in furtherance of his obligation to pay his winning bid amount. The order did not reference any credit for the initial payment Randolph made on the date of the sale, representing 10 percent of his winning bid, as he was required to do pursuant to the master in partition.[4] Therefore, the trial court did not abuse its discretion by concluding that Randolph was in contempt by willfully violating its January 2019 order by remitting only $224,500 of the $390,000 required.

---

[4] The specific language at issue states: "Randolph Forkal, Defendant/Respondent shall pay over to the Davis Law PC. Trust, within ten (10) days, the sum of three hundred ninety thousand dollars ($390,000), a portion of the $662,000 remaining of his successful bid for the real estate." Trial Ct. Order 1/18/19.

Moreover, the doctrine of the law of the case does not preclude the trial court's contempt finding. In this Court's October 2020 decision, we did not consider whether Randolph was in contempt of the January 2019 order. Thus, this Court did not resolve a legal issue that would preclude the trial court's finding of contempt. **See Starr**, 664 A.2d at 1331. Indeed, in the particular posture of this procedurally complex case, this Court did not address Randolph's compliance with the January 2019 order in our prior decision. Rather, we examined whether the proper procedures were followed pursuant to Pennsylvania Rule of Civil Procedure 1573. Thus, the law of the case doctrine is instantly inapposite. **See Mariner**, 152 A.3d at 282-83.

In addition, we find Randolph's argument that he did not have sufficient notice that the trial court might negate his winning bid in favor of Mark's bid if he did not remit payment for the total amount of his bid to be disingenuous. This Court, in its 2020 decision, specifically directed the trial court to do just that in the event the court determined that Randolph could not fulfill his 2018 bid. Furthermore, as emphasized by the trial court, Randolph was required to pay in full the remaining balance of his bid within 20 days of the 2018 sale, but yet still had not over **three years** later. **See** Tr. Ct. Pa.R.A.P. 1925 Op, 1/5/22 at 7-8. Moreover, Randolph was aware that in addition to Mark's contempt petitions, the court was also considering Mark's July 1, 2021 petition to compel Randolph to pay the outstanding balance of his winning 2018 bid. Accordingly, we conclude that Randolph's first two issues lack merit.

Turning to his third issue, Randolph argues that the trial court abused its discretion by declining to assist him in obtaining the financing necessary to enable him to pay the remaining balance of his 2018 winning bid. To that end, Randolph maintains that the trial court should have required the master to prepare a "Return to Sale" pursuant to Pa.R.Civ.P. 1573, which he could present to a potential lender to show proof of sale. Randolph also contends, in the alternative, that the court should have required Mark to provide him with other evidence of sale such as an agreement of sale. Randolph avers that Mark's failure to assist him in this regard caused Mark to have "unclean hands" and thus the trial court erred by rewarding him with the Property.

"The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue." **Terraciano v. Dep't. of Transp., Bureau of Driver Licensing**, 753 A.2d 233, 237-38 (Pa. 2000). Pursuant to this doctrine, a court may decline to provide equitable relief where "the party applying for such relief is guilty of bad conduct relating to the matter at issue." **Id.** at 237. The party opposing the award of equitable relief bears the burden of proving unclean hands. **See Montgomery Bros., Inc. v. Montgomery**, 112 A. 474, 475 (Pa. 1921).

Randolph's argument regarding financing is unavailing. First, he provides no legal authority to establish that the trial court was required to assist him, or even allow him more time, to obtain financing to fulfill his 2018 bid. Indeed, Randolph was required, under the terms of the 2018 private sale set forth by the master, to remit full payment within 20 days of the sale.

- 11 -

Moreover, as this Court held in its 2020 decision in this case, the master was unable to issue a "return of sale" until Randolph remitted payment for his bid. Thus, we hold that the trial court did not abuse its discretion by declining to assist Randolph to obtain financing for his 2018 bid three years after the private sale.

Likewise, the trial court also did not err by declining to find that Mark had "unclean hands." Randolph provides no authority that Mark was obligated to assist Randolph in obtaining financing for the outstanding balance of his winning 2018 bid. Mark's refusal does not constitute fraudulent or deceitful conduct, especially considering he had placed a highly competitive bid in the 2018 private sale himself. *See Terraciano*, 753 A.2d at 237-38. Accordingly, we conclude that Randolph's third issue also warrants no relief. We affirm the trial court's order finding that Mark's 2018 bid should now constitute the winning bid for the Property.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2022

- 12 -